# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANACOR PHARMACEUTICALS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. _____ |
| | ) |
| MYLAN PHARMACEUTICALS INC. and | ) |
| MYLAN INC., | ) |
| | ) |
| Defendants. | ) |

## **COMPLAINT**

Plaintiff Anacor Pharmaceuticals, Inc. ("Anacor"), by its attorneys, for its Complaint, alleges as follows:

1. This is an action for patent infringement under the patent laws of the United States, Title 35, United States Code that arises out of Defendants' filing of an Abbreviated New Drug Application ("ANDA") with the U.S. Food and Drug Administration ("FDA") seeking approval to manufacture and sell a generic version of Kerydin® (TAVABOROLE) TOPICAL SOLUTION, 5% ("Kerydin"), prior to the expiration of U.S. Patent No. 9,459,938 ("the '938 patent"); U.S. Patent No. 9,566,289 ("the '289 patent"); U.S. Patent No. 9,566,290 ("the '290 patent"); and U.S. Patent No. 9,572,823 ("the '823 patent"). These four patents are referred to collectively herein as "the patents-in-suit."

2. Mylan Pharmaceuticals Inc. notified Anacor by letter dated September 17, 2018 ("Mylan's Notice Letter") that it had submitted to the FDA ANDA No. 212065 ("Mylan's ANDA"), seeking approval from the FDA to engage in the commercial manufacture, use and/or sale of a generic tavaborole topical solution ("Mylan's ANDA Product") prior to the expiration of the patents-in-suit.

3. Upon information and belief, Mylan's ANDA Product is a drug product that is a generic version of Kerydin, containing the same or equivalent ingredients in the same or equivalent amounts.

**PARTIES**

4. Plaintiff Anacor is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 235 East 42nd Street, New York, New York 10017.

5. Upon information and belief, defendant Mylan Pharmaceuticals Inc. is a corporation organized and existing under the laws of the State of West Virginia, having its principal place of business at 781 Chestnut Ridge Road, Morgantown, WV 26505. Upon information and belief, Mylan Pharmaceuticals Inc. is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical drugs for the U.S. market.

6. Upon information and belief, defendant Mylan Inc. is a corporation organized and existing under the laws of the State of Pennsylvania, having a principal place of business at 1500 Corporate Drive, Canonsburg, PA 15317. Upon information and belief, Mylan Inc. is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical products through various operating subsidiaries, including Mylan Pharmaceuticals Inc.

7. Upon information and belief, Mylan Pharmaceuticals Inc. is a wholly owned subsidiary of Mylan Inc. Mylan Pharmaceuticals Inc. and Mylan Inc. are collectively referred to herein as "Mylan."

2

# JURISDICTION

8. Jurisdiction is proper in this district pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

9. This Court has personal jurisdiction over Mylan.

10. Mylan Pharmaceuticals Inc. is subject to personal jurisdiction in Delaware because, among other things, it has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here. Upon information and belief, Mylan Pharmaceuticals Inc. develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware and therefore transacts business within the State of Delaware related to Anacor's claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

11. Mylan Inc. is subject to personal jurisdiction in Delaware because, among other things, Mylan Inc., itself and through its wholly-owned subsidiary Mylan Pharmaceuticals Inc., has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here. Upon information and belief, Mylan Inc., itself and through its subsidiary Mylan Pharmaceuticals Inc., develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware and therefore transacts business within the State of Delaware, and/or has engaged in systematic and continuous business contacts within the State of Delaware. In addition, Mylan Inc. is subject to personal jurisdiction in Delaware because, upon information and belief, it controls and dominates Mylan Pharmaceuticals Inc. and therefore the activities of Mylan Pharmaceuticals Inc. in this jurisdiction are attributed to Mylan Inc.

12. Mylan has previously used the process contemplated by the Hatch-Waxman Act to challenge branded pharmaceutical companies' patents by filing a certification of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), serving a notice letter on those companies, and engaging in patent litigation arising from the process contemplated by the Hatch-Waxman Act.

13. Upon information and belief, Mylan, with knowledge of the Hatch-Waxman Act process, directed Mylan's Notice Letter to, *inter alia*, Anacor, an entity incorporated in Delaware, and alleged in Mylan's Notice Letter that Anacor's patents are invalid. Upon information and belief, Mylan knowingly and deliberately challenged Anacor's patent rights, and knew when it did so that it was triggering a forty-five day period for Anacor to bring an action for patent infringement under the Hatch-Waxman Act.

14. Because Anacor is a corporation incorporated in Delaware, Anacor suffers injury and consequences from Mylan's filing of Mylan's ANDA, challenging Anacor's patent rights, in Delaware. Upon information and belief, Mylan knew that it was deliberately challenging the patent rights of a Delaware entity and seeking to invalidate intellectual property held in Delaware. Mylan has been a litigant in connection with other infringement actions under the Hatch-Waxman Act, and reasonably should have anticipated that by sending Mylan's Notice Letter to Anacor, a Delaware corporation, that it would be sued in Delaware for patent infringement.

15. Upon information and belief, if Mylan's ANDA is approved, Mylan will directly or indirectly manufacture, market, sell, and/or distribute Mylan's ANDA Product within the United States, including in Delaware, consistently with Mylan's practices for the marketing and distribution of other generic pharmaceutical products. Upon information and belief, Mylan

regularly does business in Delaware, and its practices with other generic pharmaceutical products have involved placing those products into the stream of commerce for distribution throughout the United States, including in Delaware. Upon information and belief, Mylan's generic pharmaceutical products are used and/or consumed within and throughout the United States, including in Delaware. Upon information and belief, Mylan's ANDA Product will be prescribed by physicians practicing in Delaware, dispensed by pharmacies located within Delaware, and used by patients in Delaware. Each of these activities would have a substantial effect within Delaware and would constitute infringement of Anacor's patents in the event that Mylan's ANDA Product is approved before the patents expire.

16. Upon information and belief, Mylan derives substantial revenue from generic pharmaceutical products that are used and/or consumed within Delaware, and which are manufactured by Mylan and/or for which Mylan Pharmaceuticals Inc. or Mylan Inc. is the named applicant on approved ANDAs. Upon information and belief, various products for which Mylan Pharmaceuticals Inc. or Mylan Inc. is the named applicant on approved ANDAs are available at retail pharmacies in Delaware.

## THE PATENTS-IN-SUIT

17. Anacor incorporates each of the preceding paragraphs 1–16 as if fully set forth herein.

18. The inventors named on each of the patents-in-suit are Stephen J. Baker, Tsutomu Akama, Vincent S. Hernandez, Karin M. Hold, Kirk Maples, Jacob J. Plattner, Virginia Sanders, Yong-Kang Zhang, Gregory T. Fieldson, and James J. Leyden (collectively, "the Named Inventors").

19. The '938 patent, entitled "Boron-Containing Small Molecules" (Exhibit A hereto), was duly and legally issued on January 24, 2017, to Anacor, as assignee of the Named Inventors.

20. The '938 patent claims, *inter alia*, a method of treating a *Tinea unguium* infection of a toenail of a human, the method comprising topically administering to the toenail of the human a pharmaceutical composition comprising 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof in an amount sufficient to treat the infection, wherein the pharmaceutical composition is in the form of a solution comprising 5% w/w 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole.

21. The '938 patent claims, *inter alia*, a method of treating a *Tinea unguium* infection of a toenail of a human, the method comprising topically administering to the toenail of the human a pharmaceutical composition comprising 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof in an amount sufficient to treat the infection, wherein the *Tinea unguium* infection is due to *Trichophyton rubrum* or *Trichophyton mentagrophytes*, and wherein the pharmaceutical composition is in the form of a solution comprising 5% w/w 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole.

22. The '938 patent claims, *inter alia*, a method of treating a *Tinea unguium* infection of a toenail of a human, the method comprising topically administering to the toenail of the human a pharmaceutical composition comprising 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof in an amount sufficient to treat the infection, wherein the *Tinea unguium* infection is due to *Trichophyton rubrum* or *Trichophyton mentagrophytes*, wherein the pharmaceutical composition is in the form of a solution comprising

5% w/w 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole, and wherein the pharmaceutical composition further comprises ethanol and propylene glycol.

23. The '289 patent, entitled "Boron-Containing Small Molecules" (Exhibit B hereto), was duly and legally issued on February 14, 2017, to Anacor, as assignee of the Named Inventors.

24. The '289 patent claims, *inter alia*, a pharmaceutical formulation comprising 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benoxaborole, or a pharmaceutically acceptable salt thereof, a solvent system, and a chelating agent; wherein the 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole, or a pharmaceutically acceptable salt thereof, is present in a concentration of about 5% w/w.

25. The '289 patent claims, *inter alia*, a pharmaceutical formulation comprising about 5% w/w 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benoxaborole, or a pharmaceutically acceptable salt thereof, propylene glycol, ethanol, and ethylene diamine tetraacetic acid (EDTA) or a pharmaceutically acceptable salt thereof.

26. The '289 patent claims, *inter alia*, a pharmaceutical formulation comprising about 5% w/w 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benoxaborole, or a pharmaceutically acceptable salt thereof, propylene glycol, ethanol, and ethylene diamine tetraacetic acid (EDTA) or a pharmaceutically acceptable salt thereof; wherein the formulation is suitable for the treatment of onychomycosis of a toenail due to *Trichophyton rubrum* or *Trichophyton mentagrophytes* by topical application of the formulation to the toenail.

27. The '289 patent claims, *inter alia*, a pharmaceutical formulation comprising about 5% w/w 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benoxaborole, or a pharmaceutically acceptable salt thereof, propylene glycol, ethanol, and ethylene diamine

tetraacetic acid (EDTA) or a pharmaceutically acceptable salt thereof; wherein the ethylene diamine tetraacetic acid (EDTA) or a pharmaceutically acceptable salt thereof, is present in a concentration of from about 0.005% to about 2.0% w/w.

28. The '289 patent claims, *inter alia*, a pharmaceutical formulation comprising about 5% w/w 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benoxaborole, or a pharmaceutically acceptable salt thereof, propylene glycol, ethanol, and ethylene diamine tetraacetic acid (EDTA) or a pharmaceutically acceptable salt thereof; wherein the ethylene diamine tetraacetic acid (EDTA) or a pharmaceutically acceptable salt thereof, is present in a concentration of from about 0.005% to about 2.0% w/w; wherein the formulation is suitable for the treatment of onychomycosis of a toenail due to *Trichophyton rubrum* or *Trichophyton mentagrophytes* by topical application of the formulation to the toenail.

29. The '290 patent, entitled "Boron-Containing Small Molecules" (Exhibit C hereto), was duly and legally issued on February 14, 2017, to Anacor, as assignee of the Named Inventors.

30. The '290 patent claims, *inter alia*, a method of treating a human having onychomycosis of a toenail caused by *Trichophyton rubrum* or *Trichophyton mentagrophytes*, the method comprising topically administering to the toenail a pharmaceutical composition comprising an amount of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof, effective to inhibit an aminoacyl tRNA synthetase in the *Trichophyton rubrum* or *Trichophyton mentagrophytes*; wherein the pharmaceutical composition is in the form of a solution comprising 5% w/w of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof.

31. The '290 patent claims, *inter alia*, a method of treating a human having onychomycosis of a toenail caused by *Trichophyton rubrum* or *Trichophyton mentagrophytes*, the method comprising topically administering to the toenail a pharmaceutical composition comprising an amount of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof, effective to inhibit an aminoacyl tRNA synthetase in the *Trichophyton rubrum* or *Trichophyton mentagrophytes*; wherein the aminoacyl tRNA synthetase is leucyl tRNA synthetase; and wherein the pharmaceutical composition is in the form of a solution comprising 5% w/w of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof.

32. The '290 patent claims, *inter alia*, a method of treating a human having onychomycosis of a toenail caused by *Trichophyton rubrum* or *Trichophyton mentagrophytes*, the method comprising topically administering to the toenail a pharmaceutical composition comprising an amount of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof, effective to inhibit an aminoacyl tRNA synthetase in the *Trichophyton rubrum* or *Trichophyton mentagrophytes*; wherein the aminoacyl tRNA synthetase is leucyl tRNA synthetase; wherein the pharmaceutical composition is in the form of a solution comprising 5% w/w of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof; and wherein the pharmaceutical composition further comprises ethanol and propylene glycol.

33. The '290 patent claims, *inter alia*, a method of treating a human having onychomycosis of a toenail caused by *Trichophyton rubrum* or *Trichophyton mentagrophytes*, the method comprising topically administering to the toenail a pharmaceutical composition comprising an amount of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a

pharmaceutically acceptable salt thereof, effective to inhibit an aminoacyl tRNA synthetase in the *Trichophyton rubrum* or *Trichophyton mentagrophytes*; wherein the aminoacyl tRNA synthetase is leucyl tRNA synthetase; wherein the pharmaceutical composition is in the form of a solution comprising 5% w/w of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof; wherein the pharmaceutical composition further comprises ethanol and propylene glycol; and wherein the administering of the pharmaceutical composition occurs once a day.

34. The '290 patent claims, *inter alia*, a method of treating a human having onychomycosis of a toenail caused by *Trichophyton rubrum* or *Trichophyton mentagrophytes*, the method comprising topically administering to the toenail a pharmaceutical composition comprising an amount of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof, effective to inhibit an aminoacyl tRNA synthetase in the *Trichophyton rubrum* or *Trichophyton mentagrophytes*; wherein the aminoacyl tRNA synthetase is leucyl tRNA synthetase; wherein the pharmaceutical composition is in the form of a solution comprising 5% w/w of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof; wherein the pharmaceutical composition further comprises ethanol and propylene glycol; and wherein the method inhibits leucyl tRNA synthetase in *Trichophyton rubrum*.

35. The '290 patent claims, *inter alia*, a method of treating a human having onychomycosis of a toenail caused by *Trichophyton rubrum* or *Trichophyton mentagrophytes*, the method comprising topically administering to the toenail a pharmaceutical composition comprising an amount of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof, effective to inhibit an aminoacyl tRNA synthetase in

the *Trichophyton rubrum* or *Trichophyton mentagrophytes*; wherein the aminoacyl tRNA synthetase is leucyl tRNA synthetase; wherein the pharmaceutical composition is in the form of a solution comprising 5% w/w of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof; wherein the pharmaceutical composition further comprises ethanol and propylene glycol; and wherein the method inhibits leucyl tRNA synthetase in *Trichophyton mentagrophytes*.

36. The '823 patent, entitled "Boron-Containing Small Molecules" (Exhibit D hereto), was duly and legally issued on February 14, 2017, to Anacor, as assignee of the Named Inventors.

37. The '823 patent claims, *inter alia*, a method of delivering a compound, in a human, from a dorsal layer of a nail plate to a nail bed to treat onychomycosis caused by *Trichophyton rubrum* or *Trichophyton mentagrophytes*, the method comprising contacting the dorsal layer of the nail plate with a pharmaceutical composition comprising a compound that penetrates the nail plate, the compound being 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole or a pharmaceutically acceptable salt thereof, thereby treating onychomycosis due to *Trichophyton rubrum* or *Trichophyton mentagrophytes*; wherein the pharmaceutical composition is in the form of a topical solution comprising 5% w/w of 1,3-dihydro-5-fluoro-1-hydroxy-2,1-benzoxaborole, and wherein the pharmaceutical composition further comprises ethanol and propylene glycol.

38. Anacor owns each of the patents-in-suit.

39. Kerydin, and methods of using Kerydin, are covered by one or more claims of each of the patents-in-suit, and each of the patents-in-suit has been listed in connection with Kerydin in the FDA's Orange Book.

40. Anacor will be substantially and irreparably damaged by infringement of the patents-in-suit.

**COUNT I – MYLAN'S INFRINGEMENT OF THE PATENTS-IN-SUIT**

41. Anacor incorporates each of the preceding paragraphs 1–40 as if fully set forth herein.

42. In Mylan's Notice Letter, Mylan notified Anacor of the submission of Mylan's ANDA to the FDA. The purpose of that submission was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Mylan's ANDA Product prior to the expiration of the patents-in-suit.

43. In its Notice Letter, Mylan also notified Anacor that, as part of its ANDA, Mylan had filed certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355 (j)(2)(A)(vii)(IV), with respect to each of the patents-in-suit. Upon information and belief, Mylan submitted its ANDA to the FDA containing a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that each of the patents-in-suit is invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, and/or importation of Mylan's ANDA Product.

44. Mylan's ANDA Product, and the use of Mylan's ANDA Product, are covered by one or more claims of each of the patents-in-suit, including at least the following: claims 3 and 5–6 of the '938 patent; claims 10 and 12–15 of the '289 patent; claims 2, 5–6, 8, and 11–12 of the '290 patent; and claim 2 of the '823 patent.

45. In its Notice Letter, Mylan did not contest infringement of the patents-in-suit.

46. Mylan has knowledge of the each of the patents-in-suit.

47. Mylan's submission of its ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of its ANDA Product before the expiration of the patents-in-suit was an act of infringement of those patents under 35 U.S.C. § 271(e)(2)(A).

48. Upon information and belief, Mylan will engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of its ANDA Product immediately and imminently upon approval of its ANDA.

49. The manufacture, use, sale, offer for sale, or importation of Mylan's ANDA Product would infringe one or more claims of each of the patents-in-suit, including at least the claims listed in above paragraph 44.

50. Upon information and belief, the manufacture, use, sale, offer for sale, or importation of Mylan's ANDA Product in accordance with, and as directed by Mylan's proposed product labeling would infringe one or more claims of each of the patents-in-suit, including at least the claims listed in above paragraph 44.

51. Upon information and belief, Mylan plans and intends to, and will, actively induce infringement of the patents-in-suit when its ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon approval.

52. Upon information and belief, Mylan knows that Mylan's ANDA Product and its proposed labeling are especially made or adapted for use in infringing the patents-in-suit, that Mylan's ANDA Product is not a staple article or commodity of commerce, and that Mylan's ANDA Product and its proposed labeling are not suitable for substantial noninfringing use. Upon information and belief, Mylan plans and intends to, and will, contribute to infringement of the patents-in-suit immediately and imminently upon approval of Mylan's ANDA.

53. Notwithstanding Mylan's knowledge of the claims of the patents-in-suit, Mylan has continued to assert its intent to manufacture, offer for sale, sell, distribute, and/or import Mylan's ANDA Product with its product labeling following upon FDA approval of Mylan's ANDA prior to the expiration of the patents-in-suit.

54. The foregoing actions by Mylan constitute and/or will constitute infringement of the patents-in-suit; active inducement of infringement of the patents-in-suit; and contribution to the infringement by others of the patents-in-suit.

55. Upon information and belief, Mylan has acted with full knowledge of the patents-in-suit and without a reasonable basis for believing that it would not be liable for infringement of the patents-in-suit; active inducement of infringement of the patents-in-suit; and/or contribution to the infringement by others of the patents-in-suit.

56. Unless Mylan is enjoined from infringing the patents-in-suit, actively inducing infringement of the patents-in-suit, and contributing to the infringement by others of the patents-in-suit, Anacor will suffer irreparable injury. Anacor has no adequate remedy at law.

## COUNT II – DECLARATORY JUDGMENT OF INFRINGEMENT BY MYLAN OF THE PATENTS-IN-SUIT

57. Anacor incorporates each of the preceding paragraphs 1–56 as if fully set forth herein.

58. The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between Anacor on the one hand and Mylan on the other regarding Mylan's infringement, active inducement of infringement, and contribution to the infringement by others of the patents-in-suit.

59. The Court should declare that the commercial manufacture, use, sale, offer for sale or importation of Mylan's ANDA Product, or any other drug product which is covered

by or whose use is covered by one or more of the patents-in-suit, will infringe, induce the infringement of, and contribute to the infringement by others of, said patents.

WHEREFORE, Anacor requests the following relief:

(a) A judgment that each of the patents-in-suit has been infringed under 35 U.S.C. § 271(e)(2) by Mylan's submission to the FDA of Mylan's ANDA;

(b) A judgment ordering that the effective date of any FDA approval of commercial manufacture, use, or sale of Mylan's ANDA Product, or any other drug product that infringes or the use of which infringes one or more of the patents-in-suit, be not earlier than the latest of the expiration dates of said patents, inclusive of any extension(s) and additional period(s) of exclusivity;

(c) A preliminary and permanent injunction enjoining Mylan, and all persons acting in concert with Mylan, from the commercial manufacture, use, sale, offer for sale, or importation into the United States of Mylan's ANDA Product, or any other drug product covered by or whose use is covered by one or more of the patents-in-suit, prior to the expiration of said patents, inclusive of any extension(s) and additional period(s) of exclusivity;

(d) A judgment declaring that the commercial manufacture, use, sale, offer for sale or importation of Mylan's ANDA Product, or any other drug product which is covered by or whose use is covered by one-or-more of the patents-in-suit, prior to the expiration of said patents, will infringe, induce the infringement of, and contribute to the infringement by others of, said patents;

(e) A declaration that this is an exceptional case and an award of attorneys' fees pursuant to 35 U.S.C. § 285;

(f) Costs and expenses in this action; and

  (g) Such further and other relief as this Court may deem just and proper.

                MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                */s/ Jack B. Blumenfeld*

                _____
                Jack B. Blumenfeld (#1014)
                Megan E. Dellinger (#5739)
                1201 North Market Street
                P.O. Box 1347
                Wilmington, DE 19899-1347
OF COUNSEL:           (302) 658-9200
                jblumenfeld@mnat.com
Aaron P. Maurer         mdellinger@mnat.com
David I. Berl
David M. Horniak        *Attorneys for Plaintiff*
Anthony Sheh          *Anacor Pharmaceuticals, Inc.*
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

October 29, 2018

16